WILLIAM P. LANGLEY v. JOHN HARMON, CHARLES L.
POTTER, NELSON J. CLINTON, JOSEPH PARENT,
PATRICK EAGAN, AND THE PEOPLE'S
SAVINGS BANK OF DETROIT.

*Public improvements—Bids for construction—Misrepresentation—
Equity.*

The single issue of fact presented in this case is whether complainant was induced, as he claims, to make bids for the construction of certain sewers in the form in which he made them, and to deposit certain checks, the payment of which he asks to have enjoined, by the misrepresentation of the members of the board of public works of the town in which the sewers were to be constructed; which claim is held not to be supported by a preponderance of the evidence.

Appeal from Wayne.    (Reilly, J.)    Argued June 9, 1893.
Decided November 10, 1893.

Bill to enjoin the payment or negotiation of certain

checks, and to compel their surrender to complainant. Defendants Harmon, Potter, Clinton, and Parent appeal. Decree reversed, and bill dismissed, without prejudice. The facts are stated in the opinions.

*Clarence A. Lightner,* for complainant.

*Griffin & Warner,* for appellants.

MONTGOMERY, J.  This bill is filed against the defendants, Harmon, Potter, Clinton, Parent, and Eagan, who are members of the board of public works of the town of Windsor, Ont., and the People's Savings Bank of Detroit. The bill prays that the first five named defendants be compelled to deliver up and surrender two certain checks, of $3,000 and $1,000 respectively, which were deposited by the complainant with certain bids which he filed with the board for the construction of certain sewers in the town of Windsor, on the 7th of August, 1890.

We find it important to determine with some precision the issue which is made by the bill and answer. The bill alleges that prior to the 25th day of July, 1890, the town of Windsor duly authorized and instructed the board of public works to advertise for and solicit sealed tenders for the construction of certain sewers in said town of Windsor, to wit, one main sewer, so called, along Parent avenue, from Detroit river southwardly to Wyandotte street, with two branch · main sewers, so called, on Wyandotte street, and seven lateral sewers, so called, one along each of the following streets and avenues, to wit, Langlois avenue, Marentette avenue, Louis avenue, Brant street, Assumption street, Albert street, and Arthur street; that, in accordance with said instructions, the board issued printed circulars, signed by Stephen Lusted, the town clerk, requesting sealed tenders; that said circulars, in addition to a description of the sewers to be constructed, contained the following provision:

" Each work to be tendered for by a separate tender, except in the case of the main sewer along Parent avenue and its Wyandotte-street branches, which are to be included in one tender. Each tender must be in all respects in accordance with the form shown in the specifications, and any tender not in accordance therewith will not be entertained. Each tender must be accompanied with a certified bank check for $500 (except in the case of the main sewer, for which a check for $1,000 must accompany the tender), as a guaranty of good faith, which will be returned as soon as tenders are determined. except that in the case of the tender accepted, which will be returned as soon as satisfactory bond is filed with the undersigned."

The bill next alleges that complainant did not have his attention called to any of the circulars, nor did he know the contents thereof, until after said 7th day of August; that, on the 6th day of August, complainant met defendant Eagan; that Eagan, acting as a member of the board, showed complainant the plans and specifications for the sewers; that complainant told Eagan that he did not want to bid on said sewers unless he would be awarded the work of constructing all of said sewers,—that he would not accept a contract for constructing one of said sewers, or any number less than the whole thereof; that said Eagan informed complainant that said work of constructing said sewers would be granted in one contract, and that complainant's bid would not be entertained except for the whole; that complainant subsequently figured upon the plans and specifications, and prepared his tender for the work of constructing all of said sewers on one paper, and, on the morning of the 7th of August, inclosed his tender in a sealed envelope, with $4,000 in certified checks of the People's Savings Bank, consisting of one check for $3,000 and one for $1,000, both payable to the board of public works of the town of Windsor; that the complainant presented his tender to Stephen Lusted, the town clerk; that Lusted informed complainant that said bids should be made

out separately for each sewer, and that complainant's checks might be placed in any one of said envelopes. The bill further alleges that complainant explained to Lusted that he did not intend to bid for said sewers separately, and that he would not enter into a contract to construct one of said sewers, or any number less than the whole, and that Lusted told complainant that the bids would be let in the manner indicated by complainant. The bill further alleges that complainant relied upon the statements of defendant Eagan and the town clerk, and inclosed his tender for the main sewer and branches thereof, with said certified checks, in one envelope, and inclosed in seven other separate envelopes, but with no check or money in any form, the tenders for said seven lateral sewers, at that time understanding that said tenders were to be accepted or rejected together, and not separately. The bill farther alleges that he was subsequently notified that complainant's tenders for the construction of sewers on Langlois avenue, Marentette avenue, and Brant street were accepted; and that the board subsequently declared the checks forfeited, because of complainant's failure to sign an agreement with the town for the construction of said three lateral sewers. The bill further alleges that the board subsequently entered into contracts with Collins & Chick and Goodman & White for the construction of said three lateral sewers. The bill then avers complainant's readiness to enter into a contract for the construction of all the sewers, in accordance with his tenders. The bill then proceeds:

"Your orator shows that by the false representations so made by said board of public works as to the conditions upon which said tenders were to be made, and by the refusal of said board to accept your orator's tenders, your orator has become entitled to said certified checks; that your orator has demanded said checks of said board, but said board has refused to deliver the same, or either of them, to your orator, and the said board of public works

has demanded payment of said checks from said People's Savings Bank, and threatens to compel the payment of said checks by said bank, and said bank threatens to and is about to pay said checks to said board."

This is followed by an appropriate prayer.

We have set forth the pleadings at length, for the purpose of showing that the bill presented the single issue of whether complainant was induced to make the bids in the form in which he did, and deposit the checks, by the misrepresentations of the town's agents, or under a mistake of fact. There is no suggestion in the bill of any irregularity in the proceedings of the town board, or of any want of authority to accept the bids in the form in which they were presented. It is contended in this Court, in addition, that the bids were informal, in that the complainant failed to inclose a check with each separate bid, and also that, therefore, as he failed to comply with the requirements of the notice, there was no mutuality of contract; in other words, that the town board, when the bids were received, was not bound to act upon them, and, as the board was not bound to act upon them, complainant should not be held bound by the bids. We do not think the pleadings in the case presented that issue for the consideration of the court below, and we are not prepared to say that the local statute governing the action of the board might not have been material to be considered in the determination of the question, if the defendants had been called upon to meet it.

Recurring to the question presented in the pleadings, is the claim that complainant was misled sustained by a preponderance of the testimony? A careful examination of the record convinces us that it is not. Complainant testifies:

"I told him [Mr. Eagan] that I would bid on the whole of that work, expecting to get the whole of it or nothing. He said that my bid might go in in that way, and that it

would be allowed that way. I told him that I would not go down to Windsor and build one sewer; that I wanted a large contract, or I would not leave the city of Detroit to go over there to do any work."

. The complainant then further testifies that he prepared his bids, and inclosed them all in one envelope; that he went over to Windsor.

"It was then about 20 minutes of 12, and I handed the bids to Mr. Lusted, and he said that he would not receive them in that way; and I asked him why, and he said that they would have to be made out separate,—eight separate bids; and I told him that I was there,—that I got my information from Mr. Eagan that the work would be let— I told him that I was bidding on the work as a whole, and not as a part, and he said that he would not receive the bids without I made them out separate. I put $4,000 in the main sewer bid, and the other seven, there was nothing in them at all. There was seven other bids inside the envelope,—separate bids in separate envelopes,— with nothing in them at all except the bid itself."

"*Q.* At that time did you receive any information that was contradictory of the information received from Mr. Eagan?

"*A.* No, sir; I supposed that I could go on. I was putting in my bids separately. I thought it was all the same thing, unless a matter of form,—that Mr. Lusted wanted that form instead of one piece of paper."

Mr. Lusted testified that he distinctly told complainant before the tenders were received by him that there must be a separate bid for each sewer; the language was peremptory; there must be a separate tender for each sewer, and each tender must be inclosed in a separate envelope, with the check named in the circular.

We are convinced that complainant, who is a man of some experience in contracting, could not have failed to understand the effect of these bids, and that the case stated in his bill is not made out by a preponderance of the evidence. If the questions presented by the brief of counsel were open in the record,—namely, as to whether

the bids were in a form which required the town to act upon them, and whether, if not, they could be binding upon the complainant,—the question presented would be a serious one. As before intimated, it might depend upon the local statutes, and, as it was not within the issue, the defendants were not required to meet it. We are not disposed, however, to preclude complainant from raising the question anew.

The decree will be reversed, with costs to appealing defendants, and the bill dismissed, without prejudice. ,

HOOKER, C. J., and GRANT, J., concurred with MONT-GOMERY, J,

McGRATH, J. (dissenting). In July, 1890, the board of public works of Windsor, Ont., advertised for proposals for constructing a main sewer and several laterals. Each bid was to be accompanied by a certified check. Complainant, who resides in Detroit, tendered proposals, and accompanied them by two certified checks upon the People's Savings Bank of Detroit. On August 18, 1890, the council accepted complainant's bid for three of the lateral sewers. Complainant refused to enter into a contract, claiming that his bid was for the entire work. The board let the contract to the next lowest bidders, and claims the right to retain the checks, and apply so much of the same as is necessary to make up the difference between the bids. This bill is filed to restrain the defendant bank from paying over any moneys upon the checks, and to enjoin the other defendants, who are members of the board of public works, from negotiating the checks, and for a decree that said checks be delivered up to complainant.

It is clear that the action of the council in accepting complainant's bid and ordering a contract on August 18,

1890, was premature. In a preamble of a by-law adopted by the council September 8, 1890, it is recited that—

"It is now necessary to adopt the plans and specifications prepared for the said sewers, and to authorize and order the construction of the said works in conformity therewith."

This recital, with others relating to the same subject-matter, is followed by an enactment adopting the plans and specifications, ordering the constructing of said sewers, and directing the time within which the same should be completed.

It is well settled that an executory contract, to be valid, must be binding upon both parties. At the time when complainant's bids were accepted, no by-law had been enacted approving or adopting the plans and specifications, ordering the construction of the work, or fixing the time within which the work should be done. In the absence of such by-law, the municipality was not bound, and, if the acceptance of the proposal did not bind the municipality, it did not bind the complainant.

The decree of the court below should be affirmed.

LONG, J., concurred with McGRATH, J.